**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RACHEL T. OSBORNE, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 08-1979 (JR) |
| DAVID EISNER, CEO, CORPORATION FOR NATIONAL AND COMMUNITY SERVICE, *et al.*, | : |
| Defendants. | : |

**MEMORANDUM**

Plaintiff Rachel Osborne alleges that her former employer, the Corporation for National and Community Service (the "Agency"), discriminated against her based on a disability, in violation of the Rehabilitation Act, 29 U.S.C. §§ 701 et seq., and that it provided insufficient notice of her termination, in violation of 42 U.S.C. § 2000e-16. David Eisner, CEO of the Agency, moves for summary judgment. For the reasons that follow, the motion will be granted.

**Background**

The Agency hired Osborne as a purchasing agent in 2005. Compl. ¶ 9; Resp. 1. On October 16, 2006, she left a voice message for her supervisor stating that she had been injured in an automobile accent and would be unable to work. See Ex. F to Mot. She ceased attending work thereafter. She also began regularly mailing the Agency "Status Forms" and "Orthopedic Evaluations" from her physician. See Ex. K to Mot. The "Status

Forms" simply stated that she should not be working, and the "Orthopedic Evaluations" provided a brief description of her condition.  See id.  In all, she mailed the Agency six "Status Forms" and six "Orthopedic Evaluations" by the end of January. See id.  Over the same time period, the Agency mailed her three letters, each listing reasons why the documents she had been submitting were insufficient to show a need for continued medical leave.  See Exs. A-C to Mot.

Osborne abruptly returned to work on February 5, 2007. Compl. ¶¶ 14-15.  She also sent the Agency a letter requesting until February 20 to submit supplemental medical documentation. See Ex. D. to Mot.  On February 15, Osborne slipped and fell on a sidewalk and ceased attending work once more.  Compl. ¶ 16; Ex. E. to Mot.  Soon after her fall, she again began submitting regular "Status Forms" and "Orthopedic Evaluations" to the Agency, similar to those she had submitted previously.  See Ex. K.  There is no evidence she submitted any other documentation of her injuries stemming from either the car accident or the slip-and-fall.

On March 13, 2007, the Agency sent Osborne two more letters.  One stated that the medical documentation remained insufficient, and the second proposed that she be suspended for five days because of her absence.  See Exs. E-F to Mot.  After she submitted yet another "Status Note" on March 23, the Agency

sent her another letter on March 30, again stating that the doctor's notes were insufficient and threatening that her continued absence could lead to her termination. See Ex. G to Mot. On April 12, the Agency imposed the proposed five-day suspension. See Ex. H. to Mot. On May 1, the Agency sent a "Notice of Proposed Removal" to Osborne, stating its intent to terminate her employment. See Ex. I. to Mot. The proposed termination was approved on May 22, and the Agency ended her employment effective June 4. See Ex. J to Mot.

## Analysis

### I. Rehabilitation Act

Under the Rehabilitation Act, federal agencies are prohibited from discriminating against qualified individuals based on disabilities. See 29 U.S.C. § 794(a); Breen v. DOT, 282 F.3d 839, 841 (D.C. Cir. 2002). The standards to determine whether a federal agency has violated the Rehabilitation Act are the same as those applied to private employers under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111, et seq. See 29 U.S.C. § 794(d); 29 C.F.R. § 1614.203(b). Under the ADA, a plaintiff seeking to recover for discriminatory termination must show (1) that she was disabled, (2) that she was qualified as an employee, and (3) that she suffered an adverse employment action (here termination) because of her disability. See Breen, 282 F.3d at 841; Mogenhan v. Chertoff, 577 F. Supp. 2d

210, 218 (D.D.C. 2008).  The Agency contends that Osborne cannot meet any of these criteria.  Because I agree that Osborne cannot show she is disabled within the statutory definition, I need not reach the other elements.

A person is disabled under the statute if she has a "physical or mental impairment that substantially limits one or more [of her] major life activities."[1]  42 U.S.C. § 12102; see also 29 U.S.C. § 705(20)(B).  The impairment must "prevent[] or severely restrict[]" the individual's ability to perform the major life activity at issue and must have a long-term impact.  Toyota, 534 U.S. at 198.  To determine whether a plaintiff is substantially limited in a major life activity, courts must consider "(I) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."  Rand v. Geithner, 609 F. Supp. 2d 97, 103 (D.D.C. 2009) (quoting 29 C.F.R. § 1630.2(j)(2)).  When working is the major life activity allegedly impaired, "[t]he term substantially limits means significantly restricted in the ability to perform

---

[1] The ADA Amendments Act of 2008, Pub. L. No. 110-325, overturned the Supreme Court's interpretation of the term "disability" as expounded in Toyota Mfg., Ky., Inc. v. Williams, 534 U.S. 184 (2002) and Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999).  However, the Act became effective on January 2009, and it does not apply retroactively here.  See Lytes v. D.C. Water & Sewer Auth., 572 F.3d 936, 939-42 (D.C. Cir. 2009).

either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  29 C.F.R. § 1630.2(j)(3)(I).

To establish a disability, "[m]erely submitting a medical diagnosis of an impairment is insufficient to establish disability status."  Thompson v. Rice, 422 F. Supp. 2d 158, 170 (D.D.C. 2006) (citing Toyota, 534 U.S. at 198).  Instead, plaintiffs must offer "evidence that the extent of the limitation . . . is substantial" within the meaning of the statute.  Toyota, 334 U.S. at 198.

Osborne has not submitted any documentation of her alleged disability to the Court beyond that attached to the Agency's motion, and the Agency in turn has submitted only the numerous "Status Forms" and "Orthopedic Evaluations" that Osborne mailed to them, as well as a Montgomery County Department of Social Services medical report form.  See Ex. K.  This documentation is insufficient to establish a disability as defined in the ADA.  The "Status Forms" merely state ipse dixit that she should not be working.  See Ex. K.  The various "Orthopedic Evaluations" state that she suffered "[c]ervical, thoracic, and lumbar sprains" and later "[c]ervical and lumbar strain[s] with tremor" from her car accident and a "[l]umbrosacral sprain with coccyx contusion and possible occult fracture" from her slip and fall.  Id.  The "Orthopedic

Evaluations" also state that Osborne suffered spasms and pain in her neck and back.  Id.  However, none of these documents explain the duration or severity of her impairment, nor do they describe how the injuries might impact her ability to work or perform any other major life functions.

The Montgomery County medical report, submitted on April 12, 2007, offers a bit more detail.[2]  See Ex. K.  It mentions that Osborne could not lift more than ten pounds and that she suffered "moderate" impairment in "activities of daily living."  Id.  It also states that her doctor estimated she was unable to work from February 15 through June 15, 2007.  Id.  The report, however, does not seem to address the period prior to the slip-and-fall.  It also does not explain how her injuries relate to her ability to work.  For instance, there is nothing to link her inability to lift heavy weights to her job.  In fact, while the form contains three tables designed to show how injuries affect a person's ability to work, two of the tables are not filled in but are instead simply marked "off work."[3]  Id.

In sum, Obsborne has not offered a sufficient response to the Agency's many requests or its motion.  Therefore, she cannot prove she was disabled within the meaning of the

---

[2] There is no evidence that Osborne ever submitted this form to the Agency during her employment.

[3] On the third table, related to hand functioning, Osborne's doctor indicated that she had normal functionality.  Id.

Rehabilitation Act, and summary judgment will be granted against her claim.

## II. Due Process – Notice

The Merit Systems Protection Board ("MSPB") affirmed the Agency's decision to dismiss Osborne. See Ex. L to Mot. Osborne challenges its ruling that she received sufficient notice during the termination process. See Resp. 14; see Stone v. FDIC, 179 F.3d 1368, 1375-76 (Fed. Cir. 1999) (stating that a federal employee's due process rights include notice of allegations against her, an explanation of the employer's evidence, and an opportunity to respond). Normally, appeal of a MSPB decision must be filed in the Federal Circuit, but where such an appeal is mixed with a discrimination claim, it is properly reviewed here. See Barnes v. Small, 840 F.2d 972, 978-79 (D.C. Cir. 1988). I must review the administrative record deferentially and may set aside the MSPB's determination only if it is "arbitrary or capricious, obtained without compliance with lawful procedures, unsupported by substantial evidence or otherwise not in accordance with law." Id. at 979 (quoting 5 U.S.C. § 7703(c)).

Osborne's contention is meritless. As the MSPB found and as is undisputed, the Agency mailed notice of her proposed and actual termination to the Laurel, Maryland address she had provided it for employment-related correspondence. See Ex. L at 23-27. Osborne admits in her response that she received mail at

the same address a few months prior to her termination.  See
Resp. 2-3.  The administrative record supports the MSPB's
decision that Osborne never directed the Agency to send its
correspondence to a different address.  See Ex. L. at 26.
Therefore, the notice was sufficient and her due process rights
were not violated.

## **Conclusion**

For the reasons set forth above, summary judgment will
be granted.  An appropriate order accompanies this memorandum.


                                    JAMES ROBERTSON
                               United States District Judge